IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Helen Durbin, *on behalf of herself and others similarly situated,* | CASE NO. 1:22-cv-01719 |
| Plaintiff, | MAGISTRATE JUDGE James E. Grimes Jr. |
| vs. | |
| Foundations Health Solutions, LLC, *et al*, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

This matter is before the Court on Plaintiff Helen Durbin's Motion for Court-Facilitated Notice to Potential Opt-In Plaintiffs. Doc. 50. As is discussed below, Durbin's motion is denied.

*1. Procedural history*

Durbin filed this action against Defendants Foundations Health Solutions, LLC and Foundations Health, LLC in September 2022. Doc. 1. For simplicity, the Court refers to the Defendants collectively as "Foundations." Durbin alleged that Foundations violated the Fair Labor Standards Act ("FLSA" or the "Act"), 29 U.S.C. § 201, and Ohio Revised Code §§ 4111.03 and 4113.15 by failing to pay non-exempt employees in its facilities for all hours worked. *Id.* at 1. Specifically, Durbin alleged that Foundations failed to pay employees overtime in that Foundations "required a 30-minute meal break to be deducted from [employees] compensable hours worked even when [Durbin]

and other similarly situated employees were unable to take a full, uninterrupted bona fide meal break of thirty (30) minutes." *Id*. at 6. Durbin brings her FLSA claim under 29 U.S.C. § 216(b) on behalf of herself and all other similarly situated employees. *Id*. at 12.

In November 2022, Durbin moved under the then-prevailing standard for conditional certification and court-supervised notice to potential opt-in plaintiffs. Doc. 14. After Foundations filed an opposition and Durbin replied, the parties consented under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73 to this case being assigned to a magistrate judge. Doc. 33. The Court then re-assigned this case consistent with the parties' consent.

In April 2023, this Court granted Durbin's motion and also granted Foundations's motion to stay pending the Sixth Circuit's eventual decision in *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023), which that Court issued in May 2023. *See* Docs. 37, 41. This Court then held a conference with the parties, who agreed that *Clark* announced a new "standard [that] warranted updated briefing." Doc. 43, at 2. Based on the parties' agreement, the Court set a new briefing schedule. Under that schedule, Durbin filed a Motion for Court-Facilitated Notice to Potential Opt-In Plaintiffs, Doc. 50, supported by 18 declarations and other exhibits. Foundations filed an opposition, Doc. 54, supported by 24 declarations. And Durbin filed a reply in support of her motion. Doc. 56. Durbin's motion is now ripe for decision.

2. *Discussion*

   *2.1 The Clark standard*

The Act requires employers to "pay overtime to most employees who work more than 40 hours a week." *Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 745 (6th Cir. 2019) (citing 29 U.S.C. § 207(a)(1)). To enforce this requirement, the Act authorizes collective actions "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The Act also provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.*

In *Hoffman-LaRoche Inc. v. Sperling*, the Supreme Court held that "district courts have discretion, in appropriate cases, to implement" Section 216(b) "by facilitating notice to potential" members of a Section 216(b) collective action. 493 U.S. 165, 169–170 (1989). Following *Hoffman-LaRoche*, "most district courts … adopted a two-step approach first described in" *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 361 (D.N.J. 1987). *Clark*, 68 F.4th at 1008. Under the "'fairly lenient'" "first step—called 'conditional certification'—a district court [could] facilitate notice of an FLSA suit to other employees" based on "a 'modest factual showing' that they [were] 'similarly situated' to the original plaintiffs." *Id.* (citation omitted). Later, after discovery, the district court would decide under the second step whether the "'other employees'" were

actually "similarly situated to the original plaintiffs."[1] *Id*. If so, the court would "grant[] 'final certification' for the case to proceed to decision as a collective action." *Id*. (citation omitted).

In May, the Sixth Circuit issued *Clark*. The Court began its analysis by "reject[ing] *Lusardi*'s characterization of the notice determination as a 'certification,' conditional or otherwise." 68 F.4th at 1009. As the Court explained, a Section 216(b) collective action is not a class action; the plaintiff is not a representative and "the district court simply adds parties," who "affirmatively choose to become parties by opting into the collective action." *Id*. (quoting *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 402 (6th Cir. 2021)). So "the notice determination" does not change—it "has zero effect on"—"the character of the underlying suit." *Id*.

The Court in *Clark* then examined what the plaintiff must show "for the district court to facilitate notice to 'other employees.'" *Id*.; *see id*. at 1012 ("to be clear, '[e]mployees bear the burden of'" making "the requisite showing of similarity") (quoting *Pierce*, 922 F.3d at 744). The Court first recognized that district courts can't conclusively decide whether other employees, who aren't yet "present in the case," are actually "similarly situated." *Id*. at 1010. It then made three points that matter in this case.

---

[1]    In practice, the first step was often the main event because if the plaintiffs made it past the first step, the case "usually" settled. *Clark*, 68 F.4th at 1008.

First, it held that "[w]hether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they perform[] the same tasks and [are] subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs." *Id*. The Court provided context for this point by citing its earlier decision in *Pierce*. There, the Sixth Circuit explained that substance prevails over form. So even though the employees in *Pierce* had different job titles, the fact that their "roles require[d] identical tasks," they were "compensated … under the same plan and," their employer "track[ed] their hours under the same system," meant that the district court didn't abuse its discretion when—at the second step under the pre-*Clark* methodology—it certified a collective action as to the employees.[2] *Pierce*, 922 F.3d at 745–46.

Second, the Court in *Clark* explained that the *similarly situated* inquiry is further informed by "[w]hether other employees are subject to individualized defenses." 68 F.4th at 1010. It later explained that an employer's defenses are "a factor when determining whether other employees are similarly situated to

---

[2]      The evidence in *Pierce* revealed that the Defendant:

> employ[ed] three types of sales employees at … four locations. Front-line sales employees s[old] ownership interests to people who d[id] not own Wyndham timeshares. In-house sales employees s[old] upgraded ownership interests to existing Wyndham owners. And discovery sales employees s[old] non-ownership trials to prospects.

922 F.3d at 744.

the original plaintiffs." *Id*. at 1012. So a district court "should consider the parties' evidence as to" defenses "along with all the other evidence in determining whether the plaintiffs have met the strong-likelihood standard." *Id*.

Third, questions related to these first two points "tend to … depend on the specific facts pertaining to [the other] employees." *Id*. at 1010. As a result, both the employees and the employer are likely to possess "knowledge— sometimes unique knowledge—of the relevant facts." *Id*. And inquiry into that knowledge could be the subject of discovery. *Id*.

Given these three points, the Court held "that a district court can[not] … determine—in absentia—whether other employees are 'actually' similarly situated to the original plaintiffs." *Id*. The Court cautioned, however, that the *Lusardi* standard no longer applies; "a district court should [not] facilitate notice upon merely a 'modest showing' or under a 'lenient standard' of similarity." *Id*. That standard risks the prospect of soliciting claims of employees "who are not, in fact, eligible to join the suit," which is a circumstance that—as the Supreme Court made clear in *Hoffman-La Roche*— a district court "must" avoid. *Id*. As far as possible, "therefore, court-approved notice of the suit should be sent only to employees who are *in fact* similarly situated." *Id*. (emphasis added).

The Court then borrowed from the preliminary-injunction standard and held "that[] for a district court to facilitate notice of an FLSA suit to other

6

employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves."[3] *Id.* at 1011. The level of proof necessary to meet that standard is more than what's "necessary to create a genuine issue of fact, but less than [what's] necessary to show a preponderance." *Id.*

### 2.2 *Durbin's motion*

According to the Complaint, Foundations, or entities that it "registered … to manage and operate [it's] business activities," operates nearly 60 nursing homes. Doc. 1, at 3–4. Durbin was a licensed practical nurse while employed by Foundations as an hourly, non-exempt employee at a facility in Chardon, Ohio. Id. at 2–3. She alleges that Defendants violated the Act in that she and "other similarly situated employees" were not compensated for overtime "because Defendants required a 30-minute meal break to be deducted from their compensable time even when [Durbin] and other similarly situated employees were unable to take a full, uninterrupted bona fide meal break of thirty … minutes." *Id.* at 6. Durbin alleges that this circumstance resulted from a company-wide policy and that "Defendants had knowledge of and acted willfully regarding their conduct described" in the Complaint. *Id.* at 7.

---

[3]     "When deciding whether to grant a preliminary injunction, courts must balance four factors," including "whether the movant has a strong likelihood of success on the merits." *Memphis A. Philip Randolph Institute v. Hargett*, 2 F.4th 548, 554 (6th Cir. 2021). The other three factors aren't relevant to the *similarly situated* inquiry. *Clark*, 68 F.4th at 1011.

In her current motion, Durbin proposes to bring a collective action representing "current and former hourly, non-exempt *direct[-]care employees* … who were paid for at least forty … hours of work in any workweek" and were subject a meal-break deduction for hours worked beginning November 22, 2019. *See* Doc. 50, at 3 (emphasis added) (quoting Doc. 1, at 9). Durbin defines the phrase *direct-care employees* to "include[] all hourly direct[-]care employees, including but not limited to Licensed Practical Nurses ("LPNs"), Registered Nurses, therapists, therapist assistants, phlebotomists, and aides." *Id*. at 3 n.3. The phrase excludes state tested nursing assistants, *id*., who have already litigated claims under the Act, *id*. at 13–14; *see* Cleveland v. Foundations Health Solutions, LLC, No. 1:21-cv-01713 (filed Sept. 2, 2021).

In her motion, Durbin asserts that *Clark* did not change "the overall standard for 'similarly situated' under the FLSA," Doc. 50, at 8, and notes that this Court "granted notice in this case under the previous standard," *id*. at 9.[4] In this vein, she later asserts that another district court's pre-*Clark* conditional

---

[4]    She also emphasizes, with italics, bolding, *and* underlining(!), that the Court in *Clark* stated that district courts "'***should waste no time*** in adjudicating' motions for the facilitation of a court-approved notice." Doc. 50, at 9. If using "bold type … is the typographical equivalent of shouting," *Na'im v. Springfellow*, No. 4:21-cv-1154, 2022 WL 1631311, at *1 (E.D. Ark. May 23, 2022), using bold type with italics and underlining must be the equivalent of counsel shouting and pounding a table to tell the Court that it should hurry up and issue a decision. Courts tend to "discourage[]" litigants from addressing a court in this manner. *Id*.; *see also* Antonin Scalia & Bryan A. Garner, Making Your Case 122 (2008) (suggesting that courts find boldface type "visually repulsive" and that "[n]obody using a computer in the 21st century should … underlin[e] text").

certification and the resulting settlement of claims in that case against Foundations support her motion. *See id*. at 13–14. Durbin argues that although her declarants worked at 14 different locations "in a variety of direct[-]care positions," they are "**all** similarly" situated because they each claim that (1) they were subjected to "deducted full meal breaks from their daily hours worked," (2) they "were not able to take bona fide meal breaks (and were often discouraged from doing so)," and (3) Foundations had "no legitimate process or policy in place by which employees could regularly report their lack of a bona fide meal break and receive credit (i.e., compensation) back for such worktime." *Id*. at 10.

Durbin also asserts that Foundations's records support her motion. Doc. 50, at 11–12. According to Durbin, these records show that Foundations missed-meal-break forms require supervisor approval. *Id*. at 12. And the forms apparently "only … prompt[]" employees "to fill them out for 'No Meal Period' rather than a missed, interrupted, and/or shortened meal break." *Id*. Further, the forms place "responsibility to report missed meal breaks" on the employee rather than Foundations, which is allegedly contrary to guidance issued by the Department of Labor. *Id*.

Naturally, Foundations opposes Durbin's motion, arguing that Durbin hasn't shown that there is a strong likelihood that she will succeed. Doc. 54, at 13. More on Durbin's arguments, as relevant, below.

As an initial matter, it appears that Durbin's argument and the evidence she presents have been influenced by her belief that *Clark* did not change "the overall standard for 'similarly situated' under the FLSA," Doc. 50, at 8, and her apparent perspective that there is some significance to the fact that before *Clark*, this Court "granted notice in this case under the previous standard," *id*. at 9. Durbin's premises and her apparent perspective are mistaken.

First, *Clark* "*substantially* altered the standards governing collective actions under the FLSA in this Circuit." *Jones v. Ferro Corp.*, No. 1:22-cv-0253, 2023 WL 4456815, at *3 (N.D. Ohio July 11, 2023) (emphasis added); *see Rashad v. Mason's Pro. Cleaning Serv., LLC*, No. 2:22-cv-2635, 2023 WL 5154534, at *3 (W.D. Tenn. Aug. 10, 2023) ("*Clark* … raised the level of detail and amount of evidence such an affidavit must provide to support facilitating notice on its own."). Just as "the term 'certification'" no longer "has [a] place in FLSA actions," a district court can no longer "facilitate notice upon merely a 'modest showing' or under a 'lenient standard' of similarity." *Clark*, 68 F.4th at 1009–10.

Second, the Sixth Circuit has now settled the question of whether Section 216(b) calls for a process involving conditional certification and held that it doesn't. *Id*. at 1009. Because "'judicial decisions operate retrospectively,' … [a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312–13

(1994) (quoting *United States v. Sec. Indus. Bank*, 459 U.S. 70, 79 (1982)). As a result, unless the Supreme Court holds otherwise, in this Circuit, Section 216(b) never allowed for conditional certification and this Court therefore "should never have" issued its April 12, 2023 order granting conditional certification. *Sidney Coal Co. v. Soc. Sec. Admin.*, 427 F.3d 336, 347 (6th Cir. 2005) (citation omitted). The Court thus must reconsider its April 12, 2023 order, Doc. 37, granting conditional certification. Having reconsidered the order based on *Clark*, the Court denies the motion for conditional certification, Doc. 14. *See Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 Fed. Appx. 949, 959 (6th Cir. 2004) (explaining that under common law and Federal Rule of Civil Procedure 54(b), a court may "reconsider[] [an] interlocutory order[] when there is … an intervening change of controlling law.").

### 2.3 Durbin's evidence

With the above observations in mind, the Court turns to Durbin's evidence and her arguments. Foundations's employee handbook provides:

> A 30-minute lunch will automatically be deducted for any shift over 5 hours. Employees who perform resident care during this "lunch period" must complete a "payroll exception report" and will not be deducted the 30-minute lunch or part thereof. It is the employee's responsibility to report the "no lunch" taken.
>
> ….
>
> The meal break should not be interrupted by work and is considered a benefit. Employees who must perform resident care during their meal period will not be deducted the 30 minutes or part thereof. The

> employee must complete a "Payroll Exception
> Report" indicating the "no meal deduction" and have
> it authorized and signed by the supervisor on duty.
> All Payroll Exception Reports must be delivered to
> the Payroll Manager for processing.

Doc. 50-22, at 3, 4. In addition this and other evidence, Durbin offers 18 declarations which are notable both for what they state and for what they omit. For starters, one is struck by the similarity among the declarations and the similarity between them and the allegations in the complaint, which the declarations closely track.

All of the declarations state the Foundations facility at which the declarant worked and the declarant's position—Licensed Practical Nurse, Registered Nurse, Certified Nursing Assistant, Licensed Practical Nurse Supervisor, Respiratory Therapist, and, in one case, Assistant Director of Nursing.[5] From there, and with some variation, reading one declaration is the same as reading all of them.

They all state that Foundations required a 30-minute meal-break deduction without regard to whether the employees took "a fully uninterrupted meal break." All or nearly all include the following:

- I have personal knowledge that Foundations has a companywide policy
  of requiring a 30-minute deduction from its hourly employees' daily
  hours worked for a meal break. Foundations made this deduction

---

[5]     From some time in 2019 until December 2022, Declarant Beck served as a Licensed Practical Nurse and then as a Registered Nurse in the role of Assistant Director of Nursing. Doc. 50-4. Her declaration doesn't specify how long she served in each role. Declarant Reeder served as a Licensed Practical Nurse and a Respiratory Therapist during the two years she worked at a Foundations facility. Doc. 50-16.

regardless of whether or not its hourly employees were actually able to take a fully uninterrupted meal break.

- Generally, Foundations applied this 30-minute meal break deduction by subtracting or otherwise applying a 30-minute meal break deduction to our hours worked.

- Foundations' employees were often unable to take a 30-minute uninterrupted meal break because we were very busy and had to tend to the needs of our residents regardless of whether we were trying to take a meal break. Our residents were always our top priority, and we were not able to stop working if work needed to be done.

- We were also regularly understaffed and too busy with work duties to be able to take a full meal break, or we otherwise took a shortened meal break or had meal breaks interrupted with substantive job duties.

- My experiences were not unique to me. I personally and directly worked with, spoke to, supervised, and observed other hourly direct care employees who were also unable to take a 30-minute fully uninterrupted meal break. Residents' needs were the top priority for direct care workers, and because or prioritizing their care we were unable to take 30-minute uninterrupted meal breaks.[6]

- Foundations was aware that its employees were unable to take full, uninterrupted daily meal breaks, yet Foundations still regularly applied the 30-minute meal break deduction.

- Foundations knew that hourly employees were not being fully compensated for all overtime work performed as a result of its meal break deduction policy and/or practice of deducting 30 minutes for meal breaks even though such meal breaks were either not taken or were otherwise interrupted.

- Other current and/or former employees are likely interested in joining this lawsuit and would want to receive notice of this lawsuit.

- I anticipate that if other Foundations employees who have not yet joined this case were made aware of their right to participate in this lawsuit and pursue unpaid overtime wages, those workers/employees would come forward and join this case.

---

[6] Some declarants modified this paragraph to say that the other employees with whom them worked included state tested nurse assistants. *See*, *e.g.* Doc. 50-11, at 3.

The declarations vary to a degree in one respect. All assert that "Foundations did not train me on what constituted a bona fide meal period." Two add that "at most, all that I understood was that having no meal break at all meant that I should be paid for such time." Docs. 50-18, 50-19.  Most say:

> Further, Foundations did not have a functional policy and/or procedure whereby its employees could report missed or interrupted meal breaks and receive credit (i.e., compensation) for their meal breaks. While Foundations purported to have such a policy and/or procedure, it did not follow this policy or procedure in practice.

Five declarants say that they complained. *See* Docs. 50-2, 50-3, 50-4, 50-6, 50-12. One was told she was "no longer allowed to submit … missed meal break forms, because [her] supervisors were getting in trouble for submitting them." Doc. 50-2. Another said that she and other "employees were explicitly reprimanded during staff meetings and through staff notifications" and "were told that it was our responsibility to make sure that we were taking our breaks." Doc. 50-3. The other three said that they were rebuffed or ignored. *See* Docs. 50-4, 50-6, 50-12.

Some of those who didn't assert that they complained added claims about their experiences. Two said that they "felt strongly discouraged from trying to receive compensation (i.e., override the meal break deduction) when [they] did not receive a bona fide meal break." Docs. 50-18, 50-19. One declarant said that "Foundations [once] had a time correction slip, but if we attempted to submit a missed meal break time correction because we were

14

unable to take an uninterrupted meal break, Foundations still applied the meal break deduction to pay." Doc. 50-5. Another said that through her co-workers, she heard about "Foundations' purported reporting procedure," "but [her co-workers] told her it was useless since Foundations never credited for missed or interrupted meal breaks regardless." Doc. 50-11, at 3. Another said that "while Foundations purported to have a process for reporting missed meal breaks, when we tried to utilize this process myself and other hourly direct care employees were explicitly discouraged from using this system by our supervisors and the HR department." Doc. 50-13.

One declarant said:

> At one point, Foundations had a missed meal break form, but Foundations discouraged me and other hourly employees from utilizing this form unless there was a separate, documentable reason for missing a meal break, such as patient admissions.
> If we attempted to submit missed meal break forms simply because we were working through our breaks without a separate documentable reason, we were at risk of being reprimanded or written up by our supervisors.

Doc. 50-15. Another said:

> I submitted missed meal break forms a small handful of times during my employment, but I only did so on the worst days when I did not receive any meal break and did not even have time to take a break to go to the restroom. These were the only instances when I felt that I would have a chance of receiving approval for reporting that I did not receive any break. On all other occasions when I did not receive a full, uninterrupted meal break, I did not even attempt to report it because supervisors and HR strongly discouraged us from trying to get

15

> credit back. I needed supervisor approval in order to get credit back for a missed meal break, but supervisors would consistently tell us that we should have taken a meal break and therefore would not get approval for filling out a form.[7]

Doc. 50-16.

### 2.4 Durbin hasn't carried her burden.

There are a few problems with Durbin's evidence, starting with the fact that none of the declarations specifically say what each declarant did while employed at a Foundations facility. Recall that the *first* point the Court in *Clark* made about the *similarly situated* determination was that it "typically depends on whether [the other employees] perform[] the *same tasks* and [are] subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs." 68 F.4th at 1010. (emphasis added). And by citing *Pierce*, the Court drove home the point that district courts should focus on the employees' actual functions. *See id.* (citing *Pierce*, 922 F.3d at 745–46). So what a plaintiff and other employees actually do while working for their employer is significant. *See id.*

To be sure, all of Durbin's declarations include this line: "During my employment, I provided care and assistance to Foundations' residents." But that's it. This generic statement gives the Court nothing to work with. And this matters because its Durbin's burden to show "a 'strong likelihood' that other

---

[7]   Some declarants explained that Foundations recently instituted a new process related to dealing with meal breaks. Docs. 50-7, 50-12

employees of [Defendant] *are* 'similarly situated' to [her]." *McElroy v. Fresh Mark, Inc.*, No. 5:22-cv-287, 2023 WL 4904065, at *5 (N.D. Ohio Aug. 1, 2023). Further, none of the declarations explain what sort of care is offered at the facilities at which the declarants work.[8] This also matters because if the type of care offered varies, then the other employees' responsibilities could vary as well.

In the absence of evidence from Durbin—the party with the burden—I turn to what Foundations has to offer. *See McElroy*, 2023 WL 4904065, at *6 ("a district court can (and should) consider all the available evidence (from both sides) when making its initial determination for purposes of notice"). Its director of human resources explains that within each facility, "there are several departments that have different responsibilities and roles." Doc. 54-9, at 2. And "employees in the various departments … work in different parts of the buildings, … at different times of the day and night" and "perform different types of work pursuant to individualized job descriptions, and have differing levels of contact and interaction with the nursing home residents." *Id*. at 3. Further, Foundations's facilities vary "based upon the type of residents for whom they provide care" and the type of care they provide. Doc. 54-9, at 2. So

---

[8]     In replying to Foundations's opposition, Durbin says that she need only show that she and the other employees are similarly situated, not identically situated. Doc. 56, at 6. That's true but she still must show "a 'strong likelihood' that other employees of [Defendant] *are* 'similarly situated' to [her]." McElroy, 2023 WL 4904065, at *5; *see Clark*, 68 F.4th at 1011.

the evidence tends to show that Durbin and the other employees are not similarly situated. This is not, however, the only problem.

The next problem is knowing the exact basis for Durbin's claim. In both her motions for conditional certification and for court-facilitated notice, Durbin said that "[t]his case involves Defendants' unlawful companywide policy and/or practice of requiring meal break deductions when employees do not enjoy bona fide meal periods." Doc. 14, at 3; Doc. 50, at 3; *see also* Doc. 14, at 3 (asserting that Foundations "had a *companywide policy and/or practice* of applying a 30-minute deduction," even though Durbin and other employees "were often unable to take a full 30-minute, uninterrupted meal break") (emphasis added); *id*. at 10 (asserting that Foundations extended the "*unlawful* automatic meal break deduction *policy* and/or *practice*" to all relevant employees) (emphasis added). So Durbin seems to claim that Foundations requires meal-break deductions even though employees can't take meal breaks. And because the employees can't take meal breaks, the otherwise lawful meal-break deduction policy, *see White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012), is unlawful.

Later, however, Durbin adjusted her claim. In her motion for court-facilitated notice, Durbin says that she and the other employees were subject:

> to *a meal break policy and/or practice* during the relevant time period whereby (1) Defendants deducted full meal breaks from their daily hours worked, (2) employees were not able to take bona fide meal breaks (and were often discouraged from doing so), and (3) *there was no legitimate process or*

18

> *policy in place by which employees could regularly*
> *report their lack of a bona fide meal break and receive*
> *credit* (i.e., compensation) back for such worktime.

Doc. 50 at 10 (emphasis added). In essence, Durbin says in her motion that
Foundations had a policy that included both mandatory meal-break deductions
and, contrary to Foundations's written policy, no genuine—or possibly
functional—process for employees to report missed breaks. In other words,
Foundations's policy was—despite what's expressly stated in the employee
handbook, *see* Doc. 50-22, at 3, 4—to deny employees the ability to claim missed
meal breaks. This is somewhat consistent with Durbin's declaration in which
she claims that although "Foundations purported to have" a "policy … or
procedure" that allowed employees to "report missed or interrupted meal
breaks and receive credit[,] … it did not follow this policy or procedure in
practice." Doc. 50-2. It's also consistent with Durbin's complaint. *See* Doc. 1, at
7 (alleging that Foundations failed to "maintain a legitimate and reasonable
policy and/or practice whereby … employees could identify and report
occasions when they did not have a bona fide meal break such that they would
receive credit (i.e., compensation) for those missed/interrupted meal breaks").

Later, however, Durbin denied Foundations's assertion that she is
alleging that Foundations has "a policy to violate [its] admittedly lawful [meal-
break-deduction] policy." Doc. 56, at 3 (quoting Doc. 54, at 16). She says,
instead, that her claim is "that [Foundations] did not train, instruct, or
otherwise educate her on what constitutes a 'bona fide meal period,' meaning

that *at most* employees would have known to attempt getting credit back for a wholly missed meal break, not also interrupted and/or shortened meal breaks." *Id*. at 16. Putting aside the fact that Foundations's characterization of Durbin's claim is fair, Durbin never mentioned a failure-to-train claim in her motion for conditional certification or her motion for court-facilitated notice. *See* Docs. 14, 50. And she doesn't explain why she should be permitted to present a new formulation for the first time in her reply to Foundations's opposition.

Durbin has muddied the exact nature of her claim. Faced with this moving target, the fairest characterization of Durbin's claim is that Foundations had a policy to require meal-break-deductions and deny employees the ability to claim missed meal breaks. The former part of the policy was expressly stated in Foundations's employee handbook and the latter part was, apparently, unwritten. One could argue, as Foundations has argued, that this amounts to a claim that Foundations had a policy to violate its policy.

The rub is that Durbin has disclaimed any attempt to raise a claim that Foundations had a policy to violate its policy. Doc. 56, at 3. But she made this disclaimer in the course of her attempt to change her claim in her reply to Foundations's opposition. Given that a reply is an inappropriate place to change a claim, Durbin's disclaimer carries no weight.

This leads to a related issue. Although Durbin "is not required" to "[s]how[] a '*unified* policy' of violations," she can meet her burden by showing that she and other employees "suffer from a single, FLSA-violating policy," if

"proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 584–85 (6th Cir. 2009) (emphasis added), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016); *see Stephenson v. Fam. Sols. of Ohio, Inc.*, No. 1:18-cv-2017, 2022 WL 17552396, at *13 (N.D. Ohio Dec. 9, 2022). And that's what Durbin is attempting to do—demonstrate a single, company-wide policy. *See* Doc. 50, at 10; *see also id.* at 11 (referencing "her theory of a companywide FLSA violation"). The first part of the alleged, company-wide policy—the mandatory meal-break deduction—isn't disputed. The second part—the unwritten decision to deny employees the ability to claim missed meal breaks—is disputed.

Articulating a belief that there was an unwritten policy, however, establishes very little unless the declarant explains the basis for her belief or understanding.[9] And because "[c]ourts … have repeatedly held that only

---

[9]     *See Anderson v. McCarthy, Burges & Wolff, Inc.*, No. 1:14-CV-617, 2015 WL 224936, at *5 (N.D. Ohio Jan. 15, 2015) ("articulate[d] … personal beliefs" unaccompanied by a "basis of knowledge … have little, if any, probative value in establishing the existence of other similarly situated employees"); *see also Snide v. Disc. Drug Mart, Inc.*, No. 1:11-cv-0244, 2011 WL 5434016, at *4 (N.D. Ohio Oct. 7, 2011) ("Unsupported allegations that FLSA violations are widespread and that additional plaintiffs exist are insufficient to meet a plaintiff's burden."), *report and recommendation adopted*, 2011 WL 5452153 (N.D. Ohio Nov. 8, 2011); *West v. Border Foods, Inc.*, No. 05-2525, 2006 WL 1892527, at *6 (D. Minn. July 10, 2006).

admissible evidence may be considered in connection with a § 216(b) motion," hearsay also doesn't advance the ball.[10]

Many of the Durbin's declarants' repeated assertions run afoul of this guidance. Without a basis for the statements, neither declaring that (1) "Foundations was aware that its employees were unable to take full, uninterrupted daily meal breaks, yet Foundations still regularly applied the 30-minute meal break deduction," nor (2) "Foundations knew that hourly employees were not being fully compensated for all overtime work performed as a result of its meal break deduction policy and/or practice," Doc. 50-2, at 2–3, establish anything for the purposes of Durbin's motion. And in combination with undisputed evidence—discussed below—that Durbin and other employees successfully reported and received credit for missed meal breaks, Doc. 54-7, at 2–3, there is no basis to conclude that Foundations knew or was aware of what Durbin's declarants assert, *see Wood v. Mid-Am. Mgmt. Corp.*, 192 F. App'x 378, 380–81 (6th Cir. 2006).

Durbin's claim that she and other employees are similarly situated also runs headlong into evidence that there was no company-wide policy. According to Foundations's director of human resources, Foundations has given the human resources department at each of its facilities the "discretion as to what

---

[10]    *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 866 (S.D. Ohio 2005); *see Anderson*, 2015 WL 224936, at *5; *Pacheco v. Boar's Head Provisions Co.*, 671 F. Supp. 2d 957, 964 (W.D. Mich. 2009); *see also Yanes v. Fernandez & Fernandez Ins., Inc.*, No. 1:17-cv-23677, 2018 WL 11488016, at *4 (S.D. Fla. Feb. 13, 2018).

documentation or authorization" each facility "require[s] from an employee to receive payment for a lunch worked." Doc. 54-9, at 2; *see McElroy*, 2023 WL 4904065, at *6 ("a district court can (and should) consider all the available evidence (from both sides) when making its initial determination for purposes of notice"); *see also Clark*, 68 F.4th at 1012 (instructing that a district court "should consider the parties' evidence as to" defenses "along with all the other evidence in determining whether the plaintiffs have met the strong-likelihood standard"). Durbin does not dispute this assertion. *See* Doc. 56. Instead, Durbin's evidence supports it.

Durbin declares that she was told that she couldn't use the missed-meal-break form "because [her] supervisors were getting in trouble for submitting them." Doc. 50-2. Another employee at a different facility was "reprimanded during staff meetings and through staff notifications," and was "told that it was [her] responsibility to make sure that" she took her break. Doc. 50-3. A third employee was "explicitly discouraged from using" the missed-meal-break system "by our supervisors and the HR department." Doc. 50-13. A fourth employee admitted that there was a system for reporting missed meal breaks, but the employee thought that Foundations "intentionally made it difficult to utilize … and in fact discouraged us from utilizing it." Doc. 50-14. Still another employee said that although "Foundations had a missed meal break form," it's use was subject to the submission of "a separate, documentable reason for missing a meal break." Doc. 50-15. If anything, this "evidence shows varying

23

interpretations of policies by" officials at Foundations's facilities, which "is insufficient to" meet Durbin's burden.[11]

Further, the Court can accept each declarant's assertion that Foundations failed to train the declarant about what constituted a bona fide meal break and, in cases where it was asserted, the declarant's personal experience regarding his or her attempts to receive credit for a missed meal break. *See*, *e.g.*, Doc. 50-5, at 3. The Court can also accept that, based on the declarant's experience, the declarant *believes* that Foundations lacked a functional policy under which employees could report and receive credit for missed meal breaks. *See id*. And saying that "employees were often unable to take a 30-minute uninterrupted meal break because we were very busy," *see* Doc. 50-5, at 1, *might* qualify as a declarant's observation about circumstances at the facility where the declarant worked. But absent a stated basis for the observation, it can't demonstrate anything about any Foundations's facility other than the one at which the declarant worked. *See Anderson*, 2015 WL 224936, at \*5; *Snide*, 2011 WL 5434016, at \*4.

---

[11]     *See Triggs v. Lowe's Home Centers, Inc.*, No. 1:13-cv-1897, 2014 WL 4162203, at \*4 (N.D. Ohio Aug. 19, 2014*); see also Basco v. Wal-Mart Stores, Inc.*, No. 00-3184, 2004 WL 1497709, at \*7 (E.D. La. July 2, 2004) ("Plaintiffs' own witnesses demonstrate that the 'policy' was not even uniformly or systematically implemented at any given store."); *cf. West*, 2006 WL 1892527, at \*6 ("The circumstances … are analogous to … *Basco*, in that the Plaintiffs were employed at different store locations, where different individual restaurant managers allegedly used varying means to deprive the Plaintiffs of proper compensation for his or her overtime hours.").

This leads to still another problem. Absent other evidence, one might extrapolate from a declarant's individual experience about the effectiveness of Foundations's policy. As noted above, however, Foundations provides other evidence that Durbin and other declarants successfully reported and received credit for missed meal breaks. Doc. 54-7, at 2. And 59 of its "facilities paid their employees [for] a[] total of 112,500 reported missed meal break periods between 2019 and August 2022." *Id*. Further, the facilities at which Durbin's declarant's worked credited employees for missed meal breaks respectively between 257 and 3,371 times over the period from 2019 through August 2022. *Id*. at 2–3.

In her reply, Durbin does not dispute that she and some of the other declarants reported and received credit for missed meal breaks. Instead, Durbin takes issue with the figures that show the number of times Foundations's facilities credited missed meal, both in the aggregate and on a per-facility basis. Doc. 56, at 7. But although she *speculates* that these more general figures are misleading—the words *likely* and *may* feature in her argument—she offers no evidence to support her speculation.[12] *Id*. at 7 & n.25.

---

[12]     Durbin says that the figures are "likely **significantly overstated** because" Foundations doesn't say "which positions are included" and the figures "*probably* include[]" state tested nurse assistants, "many employees who may have never worked overtime, and administrative employees among others who Named Plaintiff does not seek to represent." Doc. 56, at 7 (emphasis added). It's not clear why these possibilities would matter; either Foundations had a policy to prevent employees from claiming missed meal breaks or didn't.

(continued)

25

So the general figures are, like the specific figures for Durbin and some of her declarants, effectively undisputed for purposes of Durbin's motion.

Likewise, Durbin's declarants all say that other employees "are likely to be interested in joining this lawsuit" and that the declarants "anticipate that if other Foundations employees" knew about this suit, they'd want to join it. *See*, *e.g.*, Doc. 50-12, at 3. These sorts of statements carry little weight. *See Snide*, 2011 WL 5434016, at *4; *see also Yanes*, 2018 WL 11488016, at *4.

### 2.5 Durbin's other points

Durbin takes issue with Foundations's argument that Durbin's declarants have filed nearly identical, boilerplate declarations. Doc. 56, at 9–10. The Court doesn't doubt Durbin's assertion that the nearly identical nature of a plaintiff's declarations can show that the plaintiff and the other employees are, in fact, subject to a common policy. Doc. 56, at 10 & n.36; *see*, *e.g.*, *Houston v. Progressive Cas. Ins. Co.*, No. 1:15-cv-1853, 2015 WL 8527339, at *2 (N.D. Ohio Dec. 11, 2015). But repeatedly saying the same thing isn't enough to turn a conclusory, unsupported statement into one with a stated or apparent basis. *Cf. Yanes*, 2018 WL 11488016, at *4 ("the conclusory nature of these identical affidavits is insufficient to evince a desire that others desire to opt-in") (citing cases).

---

Durbin also says the figures are "exaggerated" because Foundations doesn't explain the denominator—the total number of meal breaks—or the average number of meal breaks per employee. *Id.* The omitted information would obviously provide context. But that lack of context doesn't necessarily mean that the figures are inflated.

Relying on *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819 (N.D. Ohio 2011), Durbin says Foundations's declarations amount to "'happy camper' declarations at this stage that are not considered for purposes of determining if notice to potential opt-in plaintiffs is appropriate." Doc. 56, at 3. She says that under *Creely*'s reasoning, these declarations "'are of little use' pre-notice and pre-discovery because the notice stage's function 'is not to perform a detailed review of individualized facts from employees hand-picked by' the defendant." *Id*. Durbin claims that "[a]ll Defendants have done is demonstrate that they have greater access to the potential opt-in plaintiffs (as employers always do) and the ability to secure statements from a few handfuls of their employees out of the thousands of potential opt-in plaintiffs." *Id*.

This point is not well-taken. In this context, happy-camper affidavits are affidavits from employees who otherwise might be similarly situated to the plaintiff but who are "happy" with their employment situation or claim not to have experienced an FLSA violation alleged by the named plaintiff. *See, e.g., Harsh v. Kalida Mfg., Inc.*, No. 3:18-CV-2239, 2019 WL 5257051, at *3 (N.D. Ohio Oct. 17, 2019). Foundations's declarations aren't from happy campers. They are instead from administrators and human resources officials—individuals who would not be similarly situated to Durbin. And given the gaps in Durbin's evidence, Foundations's declarants provide relevant information. Also, given that Foundations's declarants are administrators and human resources officials, not "direct-care employees," Durbin's assertion that

27

Foundations has only shown that it has "greater access to the potential opt-in plaintiffs … and the ability to secure statements from a few handfuls of their employees out of the thousands of potential opt-in plaintiffs," is misplaced.

Durbin also repeatedly references the fact that Foundations settled a similar suit filed against it by state tested nurse assistants. Doc. 56, at 11, 14. She says that "this former lawsuit and settlement … bolster[s] [her] assertion that the direct care employees implicated in this lawsuit are also similarly situated." Doc. 50, at 13. The Court is unsure what to make of this. Durbin doesn't explain why the fact that Foundations chose to settle a potentially related case, which was governed by a standard that no longer applies, would have any relevance to the *similarly situated* determination in this case.

### 3. Discovery

When faced with post-*Clark*, putative collective actions under the Act, other courts in this district have granted unopposed requests for expedited discovery. *See McElroy*, 2023 WL 4904065, at *6–8; *Jones*, 2023 WL 4456815, at *5–6; *see also Clark*, 68 F.4th at 1011 ("a district court may promptly initiate discovery relevant to the motion, including if necessary by 'court order'"). Here, Durbin notes that she "has not yet had an opportunity to depose" Foundations's declarants. Doc. 56, at 3; *see also id.* at 8 ("Named Plaintiff looks forward to give proper context to the figure Defendants have provided to the Court at the second stage of the proceedings after they have had the benefit of discovery."). But the parties haven't moved the Court regarding discovery, expedited or

otherwise. So there is no need to discuss the issue. *See Rashad*, 2023 WL 5154534, at *4. Durbin's motion, Doc. 50, is denied.

Dated: August 25, 2023

*/s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge